1

Daniel D'Agostino
5220 West Saint Charles Ave.

2

Laveen, AZ 85339
(602) 999-2065

3

Plaintiff in Pro Per (Pro Se)

4

```
FILED        LODGED
RECEIVED     COPY

JAN 05 2022

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY                    DEPUTY
```

5

**IN THE UNITED STATES DISTRICT COURT**

6

**IN AND FOR THE DISTRICT OF ARIZONA**

7

DANIEL D'AGOSTINO, an individual          )          CASE NO.

8

)          **CV-21-1292-PHX-SPL**

9

)

10

Plaintiff,          )          **SECOND AMENDED COMPLAINT IN**
)          **ACTION FOR VIOLATION OF CIVIL**

11

)          **RIGHTS**

12

vs.          )          **DEMAND FOR JURY TRIAL**

13

)

14

State of Arizona; Michael Wisehart,          )          Judge: The Honorable Steven P. Logan
Director of the Arizona Department of          )          Trial Date: None set

15

Economic Security; Nicole Davis, General          )          Original Complaint Filed: 07/26/2021
Counsel and Chief Governance Officer of          )          First Amended Complaint Filed: 08/24/2021

16

the Department of Economic Security;          )
Wes Fletcher, Chief Operations Officer of          )

17

the Department of Economic          )
Security; Leona Hodges, Deputy Director          )

18

of Employment and Basic Assistance of          )
the Department of Economic          )

19

Security;          )

20

)

21

Defendants.          )

22

)

23

)

24

)

25

)

26

27

28

Plaintiff, Daniel D'Agostino, (herein "Plaintiff"), on behalf of himself, for his Complaint against Defendants, State of Arizona; Michael Wisehart, Director of the Arizona Department of Economic Security; Nicole Davis, General Counsel and Chief Governance Officer of the Arizona Department of Economic Security; Wes Fletcher, Chief Operations Officer of the Department of Economic Security; Leona Hodges, Deputy Director of Employment and Basic Assistance of the Department of Economic Security, (collectively "Defendants"), and in support thereof would show as follows:

## **INTRODUCTION**

1.     This lawsuit is brought to obtain compensatory damages, punitive damages, injunctive and declaratory relief against the Defendants  to correct the intentional and negligent tortious behavior by the Defendants by providing damages and relief to the Plaintiff.

2.     Defendants ended unemployment benefits for Plaintiff when the Plaintiff was legally eligible to continue receiving benefits under federal and state law.  Federal law extended unemployment benefits before Plaintiff's benefits ended, which he was entitled to receive.  Federal law also requires existing claimants to be paid benefits during an adjudication or review period if it extends beyond 14 days.  Defendants posted on Facebook that they were aware of the issues but failed to continue making payments to the Plaintiff during his adjudication, which lasted several months.  Defendants also failed to notify all claimants impacted by their negligence or malicious behavior.

3.     Defendants sent critical misinformation to the Plaintiff by notifying him to apply for new unemployment claims.  Defendants were aware that if the Plaintiff filed multiple claims, he would automatically become ineligible due to fraud (double-dipping).  Defendants did not notify the Plaintiff of the critical misinformation they provided the Plaintiff, which would have prevented the Plaintiff from becoming ineligible.  Plaintiff followed the instructions in the letters he received from

the Defendants.  Plaintiff then received a letter from the Defendants notifying him that he was ineligible for benefits due to fraud (double-dipping) because he applied for more than one unemployment claim (which he was instructed to do, by the Defendants).

4.     Despite Plaintiff being eligible for unemployment benefits for several months since his benefits stopped, the Defendants continued to frequently reinforce the misinformation originally provided to the Plaintiff by telling him that he was not eligible for benefits.  Those calls Plaintiff had with Defendants representatives and other calls support claims made in this complaint which are located in Plaintiff's Google Drive account:

https://drive.google.com/drive/folders/1I3_LNcveI0hqpKMsojZxjuNz9He6-CGv?usp=sharing

(EXHIBIT E).  Defendants covered up their negligence and malicious behavior by maliciously and intentionally failing to notify the Plaintiff of the critical misinformation they provided; and by maliciously and intentionally failing to notify and train their deputies or claim representatives that existing claimants were still eligible, should not apply for a new unemployment claim, and should continue filing their weekly claim.  Those calls and several other calls support claims made in this complaint which are located in Plaintiff's Google Drive account:

https://drive.google.com/drive/folders/1I3_LNcveI0hqpKMsojZxjuNz9He6-CGv?usp=sharing

(EXHIBIT E).  The Defendants use a messaging system to communicate important messages quickly and easily to deputies or representatives.  Defendants intentionally covered up their fatal errors, which caused even more intentional damage to the Plaintiff.

5.     Plaintiff spoke with about 40-50 Defendants' representatives spanning several months.  On June 30, 2021, Plaintiff explained that he was not receiving benefits for several months to one of Defendants' representatives.  The Defendants' representative stated, "we've had SO MANY claimants with the same issue" (4:36).  At one point during the call, Plaintiff asked "How many people are affected by this" (29:53).  She responded "Oh my gosh, it could be TEN

THOUSAND" (29:58).  She explained that the Defendants were aware of the issue since March 21, 2021.  The 32-minute call is named "phone_20210629-113547_6025425954".  That call and several other calls support claims made in this complaint which are located in Plaintiff's Google Drive account:  https://drive.google.com/drive/folders/1I3_LNcveI0hqpKMsojZxjuNz9He6-CGv?usp=sharing (EXHIBIT E).  It's Plaintiff's understanding that Defendants denied these claims as being facts in their response to the original complaint, even though their own representative confirmed the information in the recording.

6.

7.     Although the underlying motive has not been determined at this point, in May 2021, Governor Doug Ducey stated, "In Arizona, we're going to use federal money to encourage people to work ... instead of paying people not to work".  His actions are not compliant with Federal and state laws - Ariz. CODE A.R.S. § 23-645 "Cooperate with the United States department of labor to the fullest extent".

8.     Governor Ducey clearly has good intentions to help people get back to work but his actions will likely cause more harm than good.  Plaintiff has been unsuccessful in finding work in the engineering field, despite his track record of success over the last 23 years as an engineer and entrepreneur.  Based on the information provided by the Defendants representative on June 30, 2021, located in Plaintiff's Google Drive account: https://drive.google.com/drive/folders/1I3_LNcveI0hqpKMsojZxjuNz9He6-CGv?usp=sharing (EXHIBIT E), and the thousands of comments provided by thousands of people on Facebook (EXHIBIT F), it's reasonable to believe that thousands of other claimants have had similar pandemic related hardships due to the Defendants negligence and malicious behavior.

9.     This action is brought against the Defendants in their respective official capacity for violations of federal and state law, including: (1) violations of Plaintiffs' procedural due process

rights under the Fourteenth Amendment to the U.S. Constitution; (2) violations of the Social Security Act and its regulations; (3) violations of federal laws governing the presumption of continued eligibility - UIPL 04-01 (EXHIBIT C); (4) violations of Arizona state law – Arizona Code § 23-773; (5) violations of Arizona state law – Arizona Code § 23-771; (6) intentional infliction of emotional distress; and (7) negligence.

10.     Unemployment benefits are intended to provide emergency cash assistance to Workers who lose their jobs, to tide them over until they can find another job. Benefits are supposed to be available immediately: "as close to the nearest payday following termination" as possible. *Cal. Dep't of Human Res. Dev. V. Java*, 402 U.S. 121, 130 (1971). But for approximately ten thousand Arizonans, according to Defendants' representative on June 30, 2021 (FILENAME: "phone_20210629-113547_6025425954",  Google Drive Link: https://drive.google.com/drive/folders/1I3_LNcveI0hqpKMsojZxjuNz9He6-CGv?usp=sharing) (EXHIBIT E), the unemployment benefits system has failed completely: their claims for extended benefits afforded by the federal government have resulted in false claims of denial because of severe errors made by the Defendants.

11.     Making matters worse, these unconscionable bureaucratic failures and knowingly illegal acts have not just blocked access to extended state unemployment benefits. Significant federal aid – including additional federal payments of up to $600 per week – has also been blocked, because those benefits are to be paid through the state unemployment system.

12.     All of this is occurring in the context of massive Federal funding and mandates to address the ongoing COVID-19 economic crisis through expanded and extended unemployment benefits. The Defendants refusal to construct a process to ensure that these benefits promptly get to those who need them denies Arizonans the promise of these federal commitments.

13. Plaintiff stopped receiving unemployment benefits after March 20, 2021, despite his legal eligibility, as mandated by Federal and State law. He filed a PEUC claim for unemployment benefits after receiving a letter from the Defendants in late March 2021 instructing the Plaintiff to file a PEUC unemployment claim. In the letter, Defendants explained that Federal law was signed on March 11, 2021 to extend unemployment benefits and that Plaintiff would "need to reopen your claim before you can continue filing for PEUC. You may do this at www.azui.com by following these instructions: 1) Click on 'Apply for PEUC' 2)… " (EXHIBIT A). Plaintiff complied with the instructions provided by the Defendants. Plaintiff then received a second letter dated April 7, 2021 claiming that he is "not eligible for Emergency Unemployment Compensation from 3/21/2021 thru indefinite. Eligibility for Pandemic Emergency Unemployment Compensation Section 2107 of Cares Act of 2020, Public Law 116-136. You are no longer eligible for Pandemic Emergency Unemployment Compensation as of the date above. YOU ARE ELIGIBLE FOR A REGULAR UNEMPLOYMENT INSURANCE CLAIM. PLEASE FILE A NEW CLAIM ONLINE AT WWW.AZUI.COM" (EXHIBIT B). Plaintiff complied with the instructions provided by the Defendants. Plaintiff received a third letter after complying with the second letter. The third letter stated that because he filed multiple applications, he was no longer eligible for benefits. As of the date of this Complaint, he has neither received benefits nor been advised that his claim has been approved since it was batched with thousands of others to be reviewed by an adjudicator. Upon information and belief, there are thousands of others in a similar limbo status – denied access to the benefits they deserve and desperately need. Federal law is quite clear on this matter. If adjudication or review requires more than 14 days to complete, the State is required to continue paying benefits under the "Presumption of Continued Eligibility". Defendants have willfully not complied with Federal and State law.

14.     The Defendants sent up to ten thousand claimants a series of three letters, similar to letters sent to Plaintiff (EXHIBITS A & B).  Thousands of claimants, including the Plaintiff, should not be rejected for filing two claims when they followed the precise instructions, provided by the Defendants.

15.     A great leader recognizes their mistakes, takes accountability, and works to resolve the issues they caused to minimize the impact of their mistake.  The Defendants did not take swift action to rectify the error and bring relief to those affected.  After months since the incident involving the three consecutive letters (EXHIBITS A & B), Arizona Department of Economic Security representatives/deputies continue to regularly provide misinformation to claimants in need of relief and are slow to resolve the major issues they created.

16.     To make matters worse, when the Plaintiff's case was transitioned to a queue for review by a deputy/adjudicator, the Defendants did not send Plaintiff notice that his case was in process for review by an adjudicator/deputy or that he needed to continue filing weekly claims.  This clearly violates federal and state law.

17.     Most of the time when Plaintiff contacted Arizona Department of Economic Security representatives/deputies, he was told that he was not eligible for benefits.  Most claimants would probably stop calling and stop filing weekly claims because of misinformation disseminated by the Defendants.  The Defendants failure to notify Plaintiff and other claimants that filing weekly claims are necessary to receive benefits when the adjudicator/deputy reviews the case will cause thousands of claimants to never receive benefits they are legally eligible to receive.  Plaintiff received no notifications from Defendants since his case was transitioned to be reviewed by an adjudicator/deputy.  Claimants should have received a letter explaining the error, their effort to resolve the matter in a timely manner, and to request claimants to continue filing weekly claims.  Unfortunately, the Defendants did not provide this type of letter to impacted claimants.  This may

indicate the true nature and motive of the Defendants' actions.  Defendants may have acted with

incompetence, negligence, or with malicious intent.  In any case, they violated Federal and State law.

Discovery, including answers to interrogatory questions, along with depositions will surely uncover

the true reasoning behind the Defendants' actions and their motive.

18.     Data collected by the U.S. Department of Labor show that Arizona's unemployment

rate for June 2021 is 6.8%, which is the same as it was in June 2014.  despite a typical

unemployment rate, the Defendants struggle to correct the issues they created.

19.     Per conversation with multiple Arizona Department of Economic Security

representatives/deputies, Defendants are aware that up to approximately ten thousand people have

been affected by the errors they created.  Defendants allocated approximately sixty adjudicators to

resolve the issues.  The Plaintiff asked the representative why they did not automate the system.  The

response was shocking.  Allegedly, their system is decades old and resembles "DOS".  The Plaintiff

asked why Defendants did not come up with a solution that enabled their adjudicators to

automatically approve the first application and drop the second for those affected by the critical error

in order to expedite relief to thousands of families.  He expressed that it was extremely unlikely that

they would find any fraud and that it did not make sense to withhold relief to several thousand

families in Arizona because of the potential that a few people intentionally filed twice.  He expressed

that even if there was malicious intent by a few claimants, they would not be allowed to receive

benefits from the second application, so there was no risk.  The representative did not have an

answer but conceded that there was an opportunity for improvement within the Arizona Department

of Economic Security.

20.     From March 2021 to the date of this complaint, Plaintiff has been calling Arizona

Department of Economic Security regularly.  Sometimes, he would experience a disconnected call

and received regular misinformation from representatives.  Oftentimes, he was not able to get

through and his call would immediately get disconnected.  Thousands of families experience the same treatment.

21.     Plaintiff called Arizona Department of Economic Security about forty times between April 2021 through July 2021.  Most of the time, representatives/deputies told Plaintiff that he was not eligible for benefits.  Oftentimes, his call was disconnected when he selected the option to speak to a representative.  On a few occasions, he asked questions and was eventually told that he was eligible for benefits.  One representative/deputy explained that an adjudicator would be assigned to his case to correct the issue.  The representative/deputy further explained that Arizona Department of Economic Security was aware that this issue had affected up to ten thousand people and they assigned 60 adjudicators to resolve the issue.  The representative/deputy also explained that the Plaintiff had to continue filing weekly claims to receive benefits for the weeks leading up to the adjudication of his case.  Defendants knew this was required to receive benefits, but Defendants never sent a letter to impacted claimants.

22.     One representative/deputy told Plaintiff that an adjudicator would eventually be assigned to his case.  He never received any notice from the Defendants since his case was placed in queue for review by a deputy/adjudicator.  The Defendants were required to update him when the status changed. The Defendants never sent a letter that a mistake was ever made and that they were working to resolve it.  The Defendants never communicated with the Plaintiff since his case was moved in queue for review by an adjudicator/deputy.  There are many claimants losing their homes, cars, credit score, livelihood, good standing with creditors, and suffering emotionally and physically. The Defendants have not taken the legally required steps to notify claimants of the issues, notify them to continue filing weekly claims, or to continue paying claimants under federal law mandating the presumption of continued eligibility under UIPL 04-01 (EXHIBIT C).

**JURISDICTION AND VENUE**

23. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question), § 1343 (civil rights), and §§ 2201 and 2202 (declaratory judgment), because the action is brought under the federal Social Security Act, 42 U.S.C. § 503(a)(1), and under 42 U.S.C. § 1983 to redress the deprivation of federal statutory and constitutional rights.

24. The Court has personal jurisdiction over the Defendant because it is organized in Arizona, and the actions at issue occurred (or failed to occur) in Arizona.

25. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred within this District, and the Defendant maintains its primary office in this District.

## PARTIES

26.     Daniel D'Agostino ("Plaintiff") is, and was at all times, a citizen of the United States and a resident of the City of Phoenix, Arizona for three years.  Daniel D'Agostino has standing to bring this suit.

27.     At all times relevant, Defendant State of Arizona was a political and legal entity existing under the laws of the State of Arizona ("Defendant Arizona").  At all times relevant, Defendant Arizona was responsible for the Arizona Department of Economic Security, a state agency, responsible for overseeing programs which are designed to provide unemployment insurance benefits to eligible residents who are unemployed.  The Arizona Department of Economic Security is a non-jural entity and requires the defendant to be the State of Arizona.

28.     At all times relevant, Defendant Michael Wisehart was employed as the Director or Assistant Director of Arizona Department of Economic Security ("Defendant Wisehart" or "Wisehart"). Defendant Wisehart is named is his official capacity. Defendant Wisehart exercised supervisory authority over other employees and/or agents of Arizona Department of Economic Security who were directly or indirectly involved in one or more decisions affecting Plaintiff.

29.     At all times relevant, Defendant Nicole Davis was employed as the General Counsel and Chief Governance Officer of the Department of Economic Security ("Defendant Davis" or "Davis"). Defendant Davis is named is his official capacity. Defendant Davis exercised supervisory authority over other employees and/or agents of Arizona Department of Economic Security who were directly or indirectly involved in one or more decisions affecting Plaintiff.

30.     At all times relevant, Defendant Wes Fletcher was employed as the Chief Operations Officer of the Department of Economic Security ("Defendant Fletcher" or "Fletcher"). Defendant Fletcher is named is his official capacity. Defendant Fletcher exercised supervisory authority over other employees and/or agents of Arizona Department of Economic Security who were directly or indirectly involved in one or more decisions affecting Plaintiff.

31.     At all times relevant, Defendant Leona Hodges was employed as the Deputy Director of Employment and Basic Assistance of the Department of Economic Security ("Defendant Hodges" or "Hodges"). Defendant Hodges is named is his official capacity. Defendant Hodges exercised supervisory authority over other employees and/or agents of Arizona Department of Economic Security who were directly or indirectly involved in one or more decisions affecting Plaintiff.

## STATEMENT OF FACTS

32.     Arizona's unemployment compensation system is part of a cooperative federal- state program established during the Great Depression. The purpose of the program (codified at Title III of the Social Security Act, 42 U.S.C. § 501 et seq.) is to provide cash assistance to workers as quickly as possible after they lose employment. Java, 402 U.S. at 130 ("The objective of Congress was to provide a substitute for wages lost during a period of unemployment not the fault of the employee."); *see also see also* AZ CODE A.R.S. § 23-645 "Cooperate with the United States department of labor to the fullest extent".

33.     Speed in delivering benefits is a key feature of the unemployment compensation program. Id. at 130, 131–32 (the goal of Congress was to make benefits available "on the nearest payday following the [employee's] termination . . . to the extent that this was administratively feasible"). Accordingly, the Social Security Act requires state unemployment programs to maintain "methods of administration . . . reasonably calculated to insure full payment of unemployment compensation when due." 42 U.S.C. § 503(a)(1). Following the direction of the Supreme Court in Java, the U.S. Secretary of Labor interpreted the "when due" requirement in the Social Security Act "to require that a State law include provision for such methods of administration as will reasonably ensure the full payment of unemployment benefits to eligible claimants with the greatest promptness that is administratively feasible." 20 C.F.R. § 640.3 (emphasis supplied).

34.     In addition to regular state unemployment benefits, significant federal benefits are also paid through the state unemployment system, including: Pandemic Unemployment Assistance (which provides unemployment-type benefits to self-employed, independent contractors, and gig economy workers), Pandemic Unemployment Compensation (which aimed to provide $600 weekly supplements to unemployment insurance payments for payable benefit weeks before July 31, 2020), Lost Wages Assistance (which aimed to provide $300 weekly supplements, for several weeks in the fall of 2020, to payable benefit weeks where the claimant was eligible for $100 or more in underlying state benefits), and Pandemic Emergency Unemployment Compensation (which provides additional weeks of benefits, once someone's regular unemployment or PUA benefits are exhausted), and Extended Benefits (which aimed to provide additional weeks of benefits once someone's PEUC benefits were exhausted, for much of 2020).

35.     Most recently, benefits were extended through September 2021, as stated by the Arizona Department of Economic Security website.  Their own public record of information verifies their acknowledgment of federal benefits to existing claimants and that Plaintiff is entitled to

benefits for which he was denied, at no fault of his own

(https://des.az.gov/services/employment/unemployment-individual/covid-19-federal-unemployment-programs):

> "After the CARES Act expired, Congress passed and the President signed the Continued
> Assistance for Unemployed Workers Act of 2020 (CAA) and the American Rescue Plan Act
> of 2021 (ARPA) into law on December 27, 2020 and March 11, 2021. These programs
> extended certain federal unemployment programs including Pandemic Unemployment
> Assistance (PUA), Pandemic Emergency Unemployment Compensation (PEUC), and
> Federal Pandemic Unemployment Compensation (FPUC)."

**Pandemic Unemployment Assistance (PUA)** - "The CAA extended PUA to a maximum of
50 weeks of benefits, and the ARPA provided 29 additional weeks of benefits, for a
maximum of 79 weeks per claimant. The CAA extension weeks were payable beginning with
the benefit week ending January 2, 2021 and the 29-week ARPA extension was payable
beginning with the benefit week ending March 20, 2021.  The PUA program is available
through benefit week ending September 4, 2021."

**Pandemic Emergency Unemployment Assistance (PEUC)** - "The CAA extended PEUC to
a maximum of 24 weeks, and the ARPA provided 29 additional weeks of PEUC benefits, for
a maximum of 53 weeks per claimant.  The PEUC program is available through benefit week
ending September 4, 2021."

36.     **Extended Benefits (EB)** – "On March 27, 2021, the state of Arizona triggered off the
EB period, which is based on both state and national economic indicators. This means that under
federal and state law, the final payable week of EB was benefit week ending April 17, 2021. EB
recipients who are still unemployed or partially unemployed may be eligible to receive Pandemic
Emergency Unemployment Compensation (PEUC) by reopening their PEUC claim"

37.     Under the Social Security Act, 42 U.S.C. § 503(a)(1), a "presumption" of continued eligibility is created after a state agency such as Arizona Department of Economic Security has begun to make a series of weekly benefit payments to a claimant. UIPL 04-01 (EXHIBIT C). Accordingly, "in the absence of facts clearly establishing current ineligibility, the State agency presumes the claimant's continued eligibility until it makes a determination otherwise." Id.

38.     Such a determination – which in Arizona would be issued by an Arizona Department of Economic Security deputy, *see* Ariz. CODE A.R.S. § 23-773(A) - "a deputy shall promptly examine any claim". UIPL 04-01 (EXHIBIT C).  And as to continued claims, determinations must be made within 14 days in order to be considered "timely." UIPL 04-01 (EXHIBIT C); *see also* AZ CODE A.R.S. § 23-773(C) "The deputy shall promptly notify the claimant".

39.     If a question with respect to a claimant's eligibility arises after the claimant has begun to receive benefits, a Defendant DES deputy must either issue a determination that the claimant is ineligible within 14 days, or Arizona Department of Economic Security must pay the claimed benefits while that question waits for deputy evaluation. Id. ("when the date for a timely determination has passed in a continued claim series, the State must either issue a determination of ineligibility for Unemployment Compensation (where the facts establish ineligibility) or else pay the UC immediately"). If a deputy issues a timely determination that a claimant is ineligible, the claimant has a right to appeal.

40.     Plaintiff has received one or more unemployment benefit payments from Arizona Department of Economic Security; (b) has filed at least one additional weekly claim for benefits, for which there are payable benefits; and (c) subsequently stopped receiving benefits for a period greater than 14 days without receiving either:

(i) an appealable decision from an Arizona Department of Economic Security deputy denying their claims, or (ii) all benefit payments he or she would be entitled to receive if shown to be eligible and qualified.

41.     Plaintiff's unemployment benefits began on April 4, 2020 and ended on March 20, 2021. As mandated by federal and state law, he was entitled to continue receiving benefits until he exhausted his benefits in September 2021 because he was eligible and continued filing his weekly claims. Despite his right to have benefits extended, his benefits suddenly stopped, without cause and with an erroneous notice containing very damaging falsifications pertaining to his eligibility. Despite this, Defendants never provided a follow-up letter with information to correct the errors from the "third" letter. They also failed to instruct Plaintiff to continue filing weekly claims as while their claims were reviewed by an adjudicator/deputy.

42.     During multiple calls with Arizona Department of Economic Security representatives/deputies, it became clear that the Defendants did not have all material facts and backtracked their denial within their system but failed to notify the Plaintiff of their new actions to have a deputy/adjudicator review the case.

43.     Plaintiff's claims were placed in queue to be reviewed by an adjudicator/deputy prior to making a final determination. Defendants did not provide any form of communications, as required by Federal and State law, even after several months have passed. Plaintiff has been waiting for adjudication of his case for months, which clearly violates Federal and State law.

44.     Plaintiff called Defendant about forty times from April 2021 through July 2021 in an attempt to resolve the matter and obtain information about his case. Most of the time, he would receive incorrect information stating that he was no longer eligible. In late March, Plaintiff received a letter from Arizona Department of Economic Security instructing Plaintiff to file a PEUC unemployment claim (EXHIBIT A). Plaintiff complied and filed a new claim. On April 7, 2021,

Plaintiff received a letter from Defendants instructing Plaintiff to file a regular unemployment claim (EXHIBIT B). Plaintiff complied and filed a new claim. After filing a new claim, per the instructions from the second letter, Plaintiff received a third letter from Arizona Department of Economic Security stating that Plaintiff was no longer eligible for benefits because he filed twice.

45.     Plaintiff continued calling Arizona Department of Economic Security to try and resolve the matter. He was unsuccessful in resolving the matter after about forty calls in a four-month span. Most times, he was told that he was not eligible for benefits. Sometimes, the representative hung-up on him or would be automatically disconnected. On a few occasions, he was told that his case would be reviewed by an adjudicator. One DES representative explained that Arizona Department of Economic Security was well-aware of the situation and that up to ten thousand claimants were affected (EXHIBIT E) by Arizona Department of Economic Security letters (EXHIBITS A & B) which provided misinformation, leading claimants to unknowingly disqualify themselves from receiving additional benefits.

46.     Defendants did not provide notification to Plaintiff of the critical errors. Defendants did not disclose the issue they created. Instead, they allocated sixty adjudicators to review cases for up to ten thousand claimants affected by their catastrophic dissemination of misinformation (EXHIBIT E).

47.     During the week of July 12, 2021, one DES representative stated to the Plaintiff that "Angelica" was the adjudicator assigned to his case. During the week of July 19, 2021, another DES representative stated to the Plaintiff that there was no adjudicator assigned to his case. That last conversation further confirmed the issues with the Defendants and prompted the Plaintiff to file a formal federal lawsuit.

48.     Plaintiff struggles to find work, and suffers from the lack of benefits which are legally due by Federal law. He has suffered for several months as a result of Defendants failure to provide

the unemployment benefits due, under federal and state law.  His credit has been affected due to missed bills, he is not sleeping well at night, he has a very high level of anxiety and stress as to how he will provide for his wife and two young children, he is in jeopardy of having his car repossessed, and he is suffering from emotional distress.

49.    Plaintiff's unemployment benefits history is extracted directly from Defendants' web portal (https://azuiinternetweeklyclaim.azdes.gov/ViewClaimInfo.aspx) (EXHIBIT D).

50.    Plaintiff called Defendants and spoke with their representatives about 40-50 times since his benefits stopped because the Defendants stated that he was ineligible.  On several occasions, representatives stated that he was no longer eligible for benefits.  During some calls, representatives recognized that the Defendants were aware of the issues and that about 10,000 claimants were affected.  Those calls and several other calls support claims made in this complaint which are located in Plaintiff's Google Drive account:

https://drive.google.com/drive/folders/1I3_LNcveI0hqpKMsojZxjuNz9He6-CGv?usp=sharing (EXHIBIT E).

51.    Defendants illegally stopped paying benefits in March 2020, after about 52 weeks.  Before payments were stopped, Federal benefits were legally extended to 79 weeks.

52.    Defendants illegally withheld benefits from Plaintiff for several months and denied illegally withholding benefits in their response to the First Amended Complaint in paragraphs 4, 8, 17, and 69: "violations of federal laws governing the presumption of continued eligibility - UIPL 04-01 (EXHIBIT C); (4) violations of Arizona state law – Arizona Code § 23-773; (5) violations of Arizona state law – Arizona Code § 23-771".  Defendants are required by Federal law to continue paying claimants already receiving benefits if the time needed to resolve their eligibility issues exceeds two weeks or so.  Defendants' response to the Amended Complaint paragraphs 4, 8, 17, and 69 are patently false.  Defendants also created a public Facebook post confirming that they would not pay benefits until eligibility issues were resolved (EXHIBIT F).  This applied to Plaintiff, an existing claimant and further confirms

that Defendants were not truthful in their response to the Amended Complaint.

53.    Defendants provided a blanket denial as their response to the first amended complaint although evidence and law is clearly specified.    Their continued lack of accountability when the facts are irrefutable, is disappointing and concerning. The Defendants are attempting to pivot the discussion away from the obviousness of "the presumption of continued eligibility" Federal requirement.

54.    Defendants also avoided being truthful in their response to the Amended Complaint by leaving out the fact that they did not make past due benefits payments until AFTER the lawsuit was filed and the Defendants were served.    Defendants' level of expedience after they were served would have been appreciated when Plaintiff made about 40-50 calls to Defendants, prior to filing the original complaint.

55.    Defendants covered up their mistakes by failing to properly notify the Plaintiff of the issues they were having. Defendants created public posts on Facebook on 3/21/20 (two posts), 3/25/20, 3/29/20, 3/31/20, and 4/8/20 to disclose the issues (EXHIBIT F).    Defendants never provided proper notice to the Plaintiff.    Defendants' posts also discriminated against those who do not have access to technology.    The Plaintiff did not go to the DES Facebook page to look for updates but that is the only mode of communications Defendants used to communicate the issues.    Plaintiff never received notice of the issues.    Plaintiff followed the instructions from the letters sent by Defendants, instructing them to file a new claim, which resulted in him being disqualified for fraud (double-dipping).

56.    Defendants' Facebook posts confirm that they made mistakes and willfully failed to notify the Plaintiff and other affected claimants of critical issues impacting claimants (EXHIBIT F).    Defendants stated they would provide updates to affected claimants but failed to provide the update to the Plaintiff through any formal means of communications (EXHIBIT F).

57.    Defendants' Facebook posts confirm that they provided conflicting information within days apart.    The posts reflect Defendants' incompetence and overwhelming confusion which led to Plaintiff being left with no benefits for several months (EXHIBIT F).

58.    Here are the Defendants Facebook posts.    There are also several hundred comments from affected claimants and thousands more from other posts, for each post, which

corroborate the claims the Plaintiff has made which the Defendants deny in their response to the Amended Complaint (EXHIBIT F).

59.    Facebook Post from 3/21/20 (397 comments): "This morning, some PUA claimants may have seen a notice in the PUA Portal stating that their benefits have been exhausted. Please disregard this notice as the new federal unemployment extensions have been implemented in Arizona and our vendor is working to update this message. Please file your weekly claim. Benefit payments will not be impacted."

60.    Defendants claimed that benefit payments would not be impacted which was not true for about 10,000 people, including the Plaintiff (EXHIBIT E). Defendants sent out letters asking claimants to file new claims but never sent out letters correcting the information to prevent Plaintiff and up to 10,000 other affected claimants from losing benefits for several months. Filing new claims created a flag for double filing, which ended up denying their claims. Defendants never sent a follow-up letter notifying claimants of their mistake but they did provide a data trail confirming that they were aware of the issues and willfully withheld payments from Plaintiff and other existing claimants for several months, which is illegal.

61.    Facebook Post from 3/21/20 (448 comments): "Some PEUC claimants who recently exhausted PEUC benefits are unable to file their weekly certifications. Our team is working diligently to update the system, and we will provide updates for the impacted claimants. Please do not reopen your PEUC claim or reapply for PEUC. Eligible claimants will receive payment for the week ending March 20. We appreciate your patience and understanding."

62.    Defendants asked claimants not to open or reapply for PEUC but sent letters telling claimants to file new PEUC claims. Plaintiff and other existing claimants who followed their instructions and did not see their Facebook post resulted in being disqualified for benefits because Plaintiff and other existing claimants were flagged for "double-dipping".

63.    Facebook Post from 3/25/20 (270 comments): " PEUC claimants can now file their weekly claim for the benefit week ending March 20. Depending on the claimant's banking institution, it can take 1-3 business days to receive payment. Claimants with outstanding eligibility issues on their claim, unrelated to the resolved system issue, can file weekly claims but will not receive payment until their eligibility issue has been resolved."

64.     Defendants state that claimants will not receive payments until their eligibility issue is resolved.  In the post, Defendants clearly admit to the violations they denied in their response to the Amended Complaint in paragraphs 4, 8, 17, and 69: "violations of federal laws governing the presumption of continued eligibility - UIPL 04-01 (EXHIBIT C); (4) violations of Arizona state law – Arizona Code § 23-773; (5) violations of Arizona state law – Arizona Code § 23-771".  Defendants are required by Federal law to continue paying claimants already receiving benefits if the time needed to resolve their eligibility issues exceeds two weeks or so.  They denied the "presumption of eligibility" claim in their response, paragraphs 4, 8, 17, and 69, which is patently false.

65.     Facebook Post from 3/29/20 (339 comments): " PEUC claimants will need to exhaust their existing benefits before the federal extension will be applied to their claim. When appropriate, the extension will automatically be applied. The extension will not be visible in your account until it becomes active. Claimants do not need to apply to receive the extension. If you remain eligible, please continue to file your weekly certifications."

66.     Defendants confirm that claimant benefits will not end, and the Federal extension will automatically be applied.  This contradicts other posts where they state that after one year, a new claim needs to be filed, which is not true since the Federal benefit was extended to 79 weeks, which is more than a year.

67.     Facebook Post from 3/31/20 (224 comments): "The Unemployment Insurance (UI) benefit year is the one-year period beginning with the first day of the first week you file a claim for unemployment. Federal law requires that DES review your claim once your Benefit Year End (BYE) date occurs to determine if you should apply for a new UI claim. Our team is working as quickly as possible to review claims that may be eligible to begin a new UI benefit year and will contact you if additional information is needed."

68.     Federal benefits were extended to 79 weeks, which is more than 52 weeks.  This was misinformation provided by the Defendants.

69.     Facebook Post from 4/8/20 (349 comments): "If you see a message in the unemployment claims portal stating that your benefit year has ended, it means that you have reached one year since you filed for unemployment benefits. DES is required by state and federal law to review claims once a claimant's benefit year ends. Learn more at

https://bit.ly/3dJFpfh.  For additional information regarding the federal extension, please visit: https://bit.ly/31wBsVr".

70.     Federal benefits were extended to 79 weeks, which is more than 52 weeks.  This was misinformation provided by the Defendants.

71.     Before unemployment benefits coverage stopped for the Plaintiff, the Federal Government approved unemployment for up to 79 weeks.  Despite this, the Plaintiff's unemployment benefits stopped after about 52 weeks.  Plaintiff was legally eligible for about an additional 27 weeks at the time his benefits stopped.  The Plaintiff filed the original complaint after making about 50 calls to DES and getting nowhere.  This is a similar story to up to 10,000 other existing recipients of unemployed benefits (EXHIBIT E).  There are thousands of posts on Facebook and Reddit, each detailing the respective claimant's harrowing story.

72.     Arizona State DES failed to notify Plaintiff of the issues.  They did not provide any documents to Plaintiff expressing how they made a major catastrophic mistake or how it would impact existing claimants.  Instead, they left Plaintiff in a state of tremendous pain and suffering, resulting in irreparable harm.  The Director, Michael Weishart's bio states "Mr. Wisehart is a strong problem-solver and collaborative leader focused on supporting Arizonans in need while recognizing the important fiduciary responsibility of the Department.  He is a champion for process improvement and staff development and will focus on community partnerships and improving the customer experience for DES clients and stakeholders." (EXHIBIT G)

73.     At the bottom of his bio, he includes "The Starfish Story": "One day a man was walking along the beach when he noticed a boy picking something up and gently throwing it into the ocean. Approaching the boy, he asked, "What are you doing?" The youth replied, "Throwing starfish back into the ocean. The surf is up and the tide is going out. If I don't throw them back, they'll die." "Son," the man said, "don't you realize there are miles and miles of beach and hundreds of starfish? You can't make a difference!"  After listening politely, the boy bent down, picked up another starfish, and threw it back into the surf. Then, smiling at the man, he said…" I made a difference for that one." – Adapted from The Star Thrower by Loren Eiseley (1907-1977)" (EXHIBIT G)

74.    The thousands of comments from the Defendants' Facebook posts tell a very similar story to the Plaintiff's (EXHIBIT F).   Many claimants posted comments in the Defendants' Facebook posts to express how their benefits suddenly stopped, they were told to file new claims in letters, their claims were flagged as fraud for double-dipping, they weren't paid any benefits in months while DES failed to provide even basic updates, and if claimants did "get through" – representatives provided misinformation and even told claimants they were not eligible for benefits.   These stories align with the Plaintiff's story.   It is not a coincidence that thousands of people have a similar story to the Plaintiff's story (EXHIBIT E).   Despite this public information and their knowledge of the truth, the Defendants provided a blanket denial in their response to every claim.

75.    Michael Weishart, DES Director was featured in a Facebook post from 2018. During the pandemic, more than a year after the post, about 32 people directed comments to Michael Weishart to express their issues with DES, relating to the same issues experienced by the Plaintiff.   Michael Weishart never responded to any of the comments but has "The Starfish Story" on his bio and claims he is "focused on supporting Arizonans in need while recognizing the important fiduciary responsibility of the Department." (EXHIBIT F)

76.

## CLAIMS

### COUNT I

#### *Denial of Due Process – 42 U.S.C. § 1983*

77.    Plaintiff incorporates by reference paragraphs 1-76 as fully set forth herein.

78.    Plaintiff alleges and incorporates by reference each allegation contained in this Complaint as if set forth herein.

79.    Plaintiff asserts a claim pursuant to 42 U.S.C. § 1983 for violations of his procedural due process rights under the Fourteenth Amendment to the U.S. Constitution.

80.    Plaintiff has a legitimate expectation of entitlement to, and, thus, a protected property interest in, having his initial claims for unemployment benefits promptly examined and determined

by a DES adjudicator/Deputy – resulting either in prompt payment of unemployment benefits, or a prompt, appealable determination that they are not entitled to benefits.

81.     Defendants' failure to promptly examine claims caused the deprivation of applicant's entitlement to have his claims promptly examined. Section 1983 liability for constitutional deprivations by state actors includes the failure to act when there is a clear duty to do so.

82.     Arizona Department of Economic Security has no procedures to ensure claimant can get his initial claims for unemployment benefits promptly examined by a DES adjudicator/deputy as required by law. By causing the vast majority of claimants to wait months before their claims are examined by an adjudicator/deputy, Defendants have effectively extinguished claimant's property interest in having their claims promptly examined by a deputy. Consequently, Plaintiff is stuck in a procedural limbo, where he is not receiving prompt decisions on his claims and has no way to challenge the Defendants failure to promptly determine his eligibility and qualification for those benefits.

83.     Plaintiff asserts a claim pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's procedural due process rights under the Fourteenth Amendment to the U.S. Constitution.

84.     Plaintiff has a protected property interest in his continued receipt of unemployment benefits.

85.     Under the Social Security Act, 42 U.S.C. § 503(a)(1), and its implementing regulations, there is a "presumption" that Plaintiff is eligible to receive continued benefits unless he receives an appealable determination that they are no longer entitled to benefits.

86.     Defendants' decisions to stop benefit payments to Plaintiff plainly constitute affirmative "state actions." And even if the events were to be characterized as "inaction" – failure to issue a timely determination of ineligibility, rather than affirmatively acting to stop benefit payments – that, too, constitutes "state action" for the purposes of Section 1983.

87.     The procedures employed by Defendants are transparently inadequate because they ceased payments without issuing timely, appealable determinations, when the case was placed into queue for review by an adjudicator after the initial denial of benefits "third" letter was sent. Accordingly, Plaintiff is denied benefits they are entitled to receive, and is stuck in a procedural limbo where he cannot challenge Defendants' failures. This is not a closed question of whether a certain decision-making procedure adequately protects the Plaintiff's rights; this is a situation in which, for his purposes, there is no procedure at all.

88.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, is suffering, and will continue to suffer economic and non-economic damages in an amount subject to proof. Plaintiff is entitled to compensatory damages, punitive damages, injunctive and declaratory relief against Defendants, attorneys' fees and costs from all Defendants, and monetary and punitive damages from Defendants in their individual and/or official capacity.

## COUNT II

### *Failure to Provide Prompt Payments – 42 U.S.C. § 503(a)(1)*

89.     Plaintiff incorporates by reference paragraphs 1-88 as fully set forth herein.

90.     Plaintiff alleges and incorporates by reference each allegation contained in this Complaint as if set forth herein.

91.     Title III of the Social Security Act of 1935, 42 U.S.C. §§ 501-504, and 20 C.F.R. § 640.3(a) require that state unemployment compensation laws provide for such methods of administration as will reasonably ensure the full payment of unemployment benefits to eligible claimants when due and with the greatest promptness that is administratively feasible.

92.     Plaintiff stopped receiving benefits when he was eligible; was instructed to apply for PEUC unemployment (EXHIBIT A); filed a claim for PEUC unemployment benefits with Defendants; was instructed that he was not eligible for benefits and that he needed to reapply for a

regular unemployment claim (EXHIBIT B); filed a claim for regular unemployment benefits with Defendants, received a "third" letter stating that he was not eligible for unemployment benefits because filed twice; his claims were placed into a queue to be reviewed by an adjudicator/deputy, although he was never notified of such actions by the Defendants; and has neither received benefits, nor an appealable determination that he is not eligible and/or qualified for benefits. He exists in a limbo status in which he is entirely powerless to claim the benefits to which he is entitled – wholly at odds with the statutory mandate to make prompt payment of benefits. Accordingly, in its actions and failures to act with respect to Plaintiff, Defendants have violated, and continues to violate, the "when due" provision of the Social Security Act, 42 U.S.C. § 503(a)(1), and 20 C.F.R. § 640.3(a), actionable pursuant to 42 U.S.C. § 1983.

93.     Under the Social Security Act, 42 U.S.C. § 503(a)(1), a "presumption" of continued eligibility is created after a state agency such as the Defendant has begun to make a series of weekly benefit payments to a claimant. UIPL 04-01 (EXHIBIT C). Accordingly, "in the absence of facts clearly establishing current ineligibility, the State agency presumes the claimant's continued eligibility until it makes a determination otherwise." Id.

94.     Such a determination – which in Arizona would be issued by an Arizona Department of Economic Security deputy, *see* Ariz. CODE A.R.S. § 23-773(A) - "a deputy shall promptly examine any claim". UIPL 04-01 (EXHIBIT C).  And as to continued claims, determinations must be made within 14 days in order to be considered "timely." UIPL 04-01 (EXHIBIT C); *see also* AZ CODE A.R.S. § 23-773(C) "The deputy shall promptly notify the claimant".

95.     If a question with respect to a claimant's eligibility arises after the claimant has begun to receive benefits, an Arizona Department of Economic Security deputy must either issue a determination that the claimant is ineligible within 14 days, or Arizona Department of Economic Security must pay the claimed benefits while that question waits for deputy evaluation. Id. ("when

the date for a timely determination has passed in a continued claim series, the State must either issue a determination of ineligibility for Unemployment Compensation (where the facts establish ineligibility) or else pay the UC immediately"). If a deputy issues a timely determination that a claimant is ineligible, the claimant has a right to appeal.

96.     Plaintiff has received one or more unemployment benefit payments from Arizona Department of Economic Security; (b) has filed at least one additional weekly claim for benefits, for which there are payable benefits; and (c) subsequently stopped receiving benefits for a period greater than 14 days without receiving either:

(i) an appealable decision from an Arizona Department of Economic Security deputy denying their claims, or (ii) all benefit payments he or she would be entitled to receive if shown to be eligible and qualified.

97.     Arizona Department of Economic Security's actions in halting (and failing to promptly restart) benefit payments to Plaintiff violate the Social Security Act, 42 U.S.C. § 503(a)(1), and its implementing regulations.

98.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, is suffering, and will continue to suffer economic and non-economic damages in an amount subject to proof. Plaintiff is entitled to compensatory damages, punitive damages, injunctive and declaratory relief against Defendants, attorneys' fees and costs from all Defendants, and monetary and punitive damages from Defendants in their individual and/or official capacity.

## COUNT III

### *Failure to Comply with the Presumption of Continued Eligibility – 42 U.S.C. § 503(a)(1)*

99.     Plaintiff incorporates by reference paragraphs 1-98 as fully set forth herein.

100.    Plaintiff alleges and incorporates by reference each allegation contained in this Complaint as if set forth herein.

101.   "When the date for a timely determination has passed in a continued claim series, the State must either issue a determination of ineligibility for UC (where the facts establish ineligibility) or else pay Unemployment Claim immediately. Payment would occur under a presumption of continuing eligibility. The presumption means that the State has made an initial determination of eligibility and, based on that initial determination and the absence of facts clearly establishing current ineligibility, the State agency presumes the claimant's continued eligibility until it makes a determination otherwise. The presumption is appropriate in a continued claim series because a determination of initial eligibility exists on which the presumption can be based." UIPL 04-01 (EXHIBIT C). The presumption appropriately balances the timeliness and accuracy concerns of Section 303(a)(1), SSA.

102.   Plaintiff was legally eligible to receive benefits when his unemployment benefits stopped on March 20, 2021, due to no fault of his own.  During multiple calls with Arizona Department of Economic Security deputies, they acknowledged the error they made when they instructed claimants to file two claims (EXHIBITS A & B), resulting in a disqualification of benefits.  Moreover, they acknowledge that the Defendants were not acting quickly to resolve the matter.

103.   Defendants willfully continue to deny claimants continued eligibility status, despite knowing that they mistakenly stopped benefits for thousands of claimants, including the Plaintiff. Defendants are taking significantly more time than what is allowed by Federal law.  Despite Federal requirements, Defendants continue to fail to meet Federal law and continue to allow thousands of claimants to wait for several months, in limbo, as they slowly evaluate the claimants' cases. Defendants are required by law to presume those claimants' continued eligibility exists until it makes a determination otherwise.  Defendants are clearly violating the Federal law with their willful

actions.  It's tragic that thousands of claimants are losing their homes, cars, credit, livelihood, and are suffering greatly because the Defendants choose not to follow Federal law.

104.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, is suffering, and will continue to suffer economic and non-economic damages in an amount subject to proof. Plaintiff is entitled to compensatory damages, punitive damages, injunctive and declaratory relief against Defendants, attorneys' fees and costs from all Defendants, and monetary and punitive damages from Defendants in their individual and/or official capacity.

**COUNT IV**

***Failures to Meet Statutory Obligations – Arizona Code § 23-773***

105.    Plaintiff incorporates by reference paragraphs 1-104 as fully set forth herein.

106.    Plaintiff alleges and incorporates by reference each allegation contained in this Complaint as if set forth herein.

107.    Plaintiff has, under Arizona law, a statutory right to have his initial claims for unemployment benefits promptly examined and determined by an Arizona Department of Economic Security deputy. That examination should result either in prompt payment of unemployment benefits, or a prompt, appealable determination that the applicants are not entitled to benefits. Further, the Defendants willfully stopped paying benefits to thousands of eligible claimants.

108.    Plaintiff has filed claims for unemployment benefits with Arizona Department of Economic Security and has not had his claims promptly examined by an Arizona Department of Economic Security deputy after Arizona Department of Economic Security knowingly and illegally denied Plaintiff of benefits when Plaintiff followed the instructions provided by the Defendants in the form of letters (EXHIBITS A & B).

109.    Defendants lack procedures to ensure claimants can get their initial claims for unemployment benefits promptly examined by an Arizona Department of Economic Security deputy

as required by Ariz. CODE A.R.S. § 23-773. By causing the vast majority of claimants to wait months before their claims are examined by a deputy, if at all, Arizona Department of Economic Security has effectively extinguished claimants' statutory rights. Consequently, Plaintiff is stuck in a procedural limbo, where he is not receiving prompt decisions on his claims and, in turn, has no way to challenge Defendants' failure to promptly determine his eligibility and qualification for those benefits.

110.    If a question with respect to a claimant's eligibility arises after the claimant has begun to receive benefits, an Arizona Department of Economic Security deputy must either issue a timely determination that the claimant is ineligible, or Arizona Department of Economic Security must pay the claimed benefits.

111.    Plaintiff, (a) has received one or more unemployment benefit payments from Arizona Department of Economic Security; (b) has filed at least one additional weekly claim for benefits, for which there are payable benefits; and (c) subsequently stopped receiving benefits for a period greater than 14 days without receiving either:

(i) an appealable decision from an Arizona Department of Economic Security deputy denying their claims, or (ii) all benefit payments he or she would be entitled to receive if shown to be eligible and qualified.

112.    Defendants' actions in halting (and failing to promptly restart) benefit payments to Plaintiff violates the Ariz. CODE A.R.S. § 23-773.  The Defendants are required by State law, to comply with Federal law Ariz. CODE A.R.S. § 23-645 "Cooperate with the United States department of labor to the fullest extent".  Federal law, as outlined in this complaint, clearly requires the Defendants to provide thousands of claimants continued eligibility for reasons stated in this complaint.

113.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, is suffering, and will continue to suffer economic and non-economic damages in an amount subject to proof. Plaintiff is entitled to compensatory damages, punitive damages, injunctive and declaratory relief against Defendants, attorneys' fees and costs from all Defendants, and monetary and punitive damages from Defendants in their individual and/or official capacity.

## COUNT V

### *Failures to Meet Statutory Obligations – Arizona Code § 23-771*

114.    Plaintiff incorporates by reference paragraphs 1-113 as fully set forth herein.

115.    Plaintiff alleges and incorporates by reference each allegation contained in this Complaint as if set forth herein.

116.    Plaintiff has, under Arizona law, a statutory right to have his unemployment benefits continued without stoppage because Plaintiff clearly meets the "Eligibility for Benefits", as required by Ariz. CODE A.R.S. § 23-771.  The Defendants failed to meet Federal and State law, despite meeting eligibility requirements.

117.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, is suffering, and will continue to suffer economic and non-economic damages in an amount subject to proof. Plaintiff is entitled to compensatory damages, punitive damages, injunctive and declaratory relief against Defendants, attorneys' fees and costs from all Defendants, and monetary and punitive damages from Defendants in their individual and/or official capacity.

## COUNT VI

### *INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*

118.    Plaintiff incorporates by reference paragraphs 1-117 as fully set forth herein.

119.    Defendants' conduct was extreme and outrageous. Defendants had no lawful purpose for their conduct and knew, or reasonably should have known, that their actions violated Plaintiff's

rights. Despite knowledge that their actions violated Plaintiff's civil rights, Defendants acted in a manner that deprived Plaintiff of his statutorily protected rights.

120.    Defendants' objective was to either cause the Plaintiff emotional distress or they were aware of and disregarded the likelihood that their actions would result in emotional distress.

121.    The Defendants' actions caused Plaintiff embarrassment, humiliation, injury to reputation, mental anguish, and severe emotional distress.

122.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, is suffering, and will continue to suffer economic and non-economic damages in an amount subject to proof. Plaintiff is entitled to compensatory damages, punitive damages, injunctive and declaratory relief against Defendants, attorneys' fees and costs from all Defendants, and monetary and punitive damages from Defendants in their individual and/or official capacity.

**PRAYER FOR RELIEF**

123.    WHEREFORE, Plaintiff D'Agostino on behalf of himself, demand judgment on behalf of himself for declaratory and injunctive relief as pled, including the adjudication and payment of unemployment benefits, a prohibition against further violations of law against Plaintiff and other claimants affected and for such declaratory and injunctive relief as may be appropriate; for attorneys' fees and costs; and for such other relief the Court does determine just and appropriate.

**DEMAND FOR JURY TRIAL**

124.    Plaintiff hereby requests a jury trial on all issues raised in this complaint.

RESPECTFULLY SUBMITTED this 5th day of January, 2022.

By: Daniel D'Agostino

Plaintiff in Pro Per (Pro Se)